UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: METHOD OF PROCESSING ETHANOL BYPRODUCTS AND RELATED SUBSYSTEMS ('858) PATENT LITIGATION | ) Master Case No.: 1:10-ml-02181-LJM-DML<br>) Associated Case No.: 1:10-cv-08007-LJM-DML<br>)<br>)<br>)<br>) **JURY TRIAL DEMANDED** |

**FOURTH AMENDED COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff, GS CleanTech Corporation, for its Fourth Amended Complaint against Defendants, GEA Mechanical Equipment US, Inc., Ace Ethanol, LLC, ICM, Inc., David J. Vander Griend and DOES 1 - 30 (collectively "Defendants"), alleges as follows:

**PARTIES, JURISDICTION AND VENUE**

1. This is a claim for patent infringement and arises under the patents laws of the United States, Title 35 of the United States Code. This Court has original jurisdiction over the subject matter of this claim under 28 U.S.C. §§ 1331 and 1338(a).

2. GS CleanTech Corporation (hereinafter "GS CleanTech") is a Delaware corporation having its principal place of business at 1 Penn Plaza, Suite 1612, New York, New York 10119. GS CleanTech is a wholly-owned subsidiary of GreenShift Corporation (hereinafter "GreenShift"), a Delaware corporation having its principal place of business at 1 Penn Plaza, Suite 1612, New York, New York 10119.

3. GS CleanTech is the owner by assignment of United States Patent No. 7,601,858, entitled "Method Of Processing Ethanol Byproducts And Related Subsystems," issued on October 13, 2009 (the " '858 patent"). A true and correct copy of the '858 patent is attached

hereto as Exhibit A. The '858 patent issued from a patent application originally filed on May 5, 2005 as Serial No. 11/122,859 (the " '859 application") and published on February 23, 2006 as U.S. Patent Application Publication 2006/0041152. Both the '858 patent and the '859 application claim priority to GS CleanTech's first patent application related to its novel corn oil extraction methods and systems, which was filed in August of 2004 as a provisional application (Serial No. 60/602,050) (the "'050 provisional application"). The patent and patent application are generally directed to the recovery of corn oil from the byproducts produced during the manufacture of ethanol from corn.

   4. GS CleanTech is the owner by assignment of U.S. Pat. No. 8,008,516 ("the '516 Patent"), entitled "Method Of Processing Ethanol Byproducts And Related Subsystems," issued on August 30, 2011. A true and correct copy of the '516 patent is attached hereto as Exhibit B. The '516 patent issued from a patent application originally filed on September 30, 2005 as Serial No. 11/241,231 (the " '231 application") and published on February 23, 2006 as U.S. Patent Application Publication 2006/0041153. The '516 patent is a continuation of, and claims priority to the '858 patent that in turn claims priority to the '050 provisional application. The `516 patent is generally directed to the recovery of corn oil from the byproducts produced during the manufacture of ethanol from corn.

   5. GS CleanTech is the owner by assignment of U.S. Pat. No. 8,008,517 ("the '517 Patent"), entitled "Method Of Recovering Oil From Thin Stillage," issued on August 30, 2011. A true and correct copy of the '517 patent is attached hereto as Exhibit C. The '517 patent issued from a patent application originally filed on September 14, 2009 as Serial No. 12/559,136 (the " '136 application") and published on January 7, 2010 as U.S. Patent Application Publication 2010/0004474. The '517 patent is a continuation of, and claims priority to the '858

patent, that in turn claims priority to the '050 provisional application. The '517 patent is generally directed to the recovery of corn oil from the byproducts produced during the manufacture of ethanol from corn.

6. GS CleanTech is the owner by assignment of U.S. Pat. No. 8,283,484 ("the '484 Patent"), entitled "Method Of Processing Ethanol Byproducts And Related Subsystems," scheduled to issue on October 9, 2012. The '484 Patent was filed as Application Serial No. 13/107,197, (the " '197 application") which was allowed on September 4, 2012, and is scheduled to issue on October 9, 2012. A true and correct copy of the '197 application is attached hereto as Exhibit D. The '484 patent is a continuation of, and claims priority to the '858 patent, that in turn claims priority to the '050 provisional application. The '484 patent is generally directed to the recovery of corn oil from the byproducts produced during the manufacture of ethanol from corn.

7. GS CleanTech is the owner by assignment of U.S. Pat. No. 8,168,037 ("the '037 Patent"), entitled "Method And Systems For Enhancing Oil Recovery From Ethanol Production Byproducts," issued on May 1, 2012. A true and correct copy of the '037 patent is attached hereto as Exhibit E. The '037 patent issued from a patent application originally filed on September 17, 2007 as Serial No. 11/856,150 (the " '150 application") and published on May 15, 2008 as U.S. Patent Application Publication 2008/0115077. The '037 patent is a continuation of, and claims priority to International Application No. PCT/US2006/009238 filed on March 15, 2005 (the "'238 PCT application"). The '037 patent is generally directed to the recovery of corn oil from the byproducts produced during the manufacture of ethanol from corn.

8. GS CleanTech has standing to sue for infringement of the '858, '516, '517, '484, and '037 patents (collectively "the patents-in-suit") because it owns all right, title and interest in

3

and to the patents-in-suit, including the right to collect for past and future damages. GS CleanTech has suffered injury from the Defendants' acts of patent infringement.

9. Upon information and belief, GEA Mechanical Equipment US, Inc. (hereinafter "GEA") is a New York corporation having its principal place of business at 100 Fairway Court, Northvale, New Jersey 07647.

10. Upon information and belief, Ace Ethanol, LLC (hereinafter "Ace Ethanol") is a Wisconsin limited liability company having a place of business in Stanley, Wisconsin.

11. Upon information and belief, Ace Ethanol is one of GEA's customers. Ace Ethanol's use of GEA's product infringes, and will continue to infringe, one or more of the claims of the patents-in-suit.

12. Upon information and belief, ICM, Inc. (hereinafter "ICM") is a Kansas corporation having a place of business at 310 North First Street, Colwich, Kansas.

13. Upon information and belief, David J. Vander Griend (hereinafter "Vander Griend") resides in Kansas at 1905 North Glen Wood Street, Wichita, Kansas.

14. Upon information and belief, Vander Griend is the founder, President, and CEO of ICM.

15. The true names and capacities of the Defendants DOES 1-30 inclusive are unknown to GS CleanTech, who therefore sues them by such fictitious names. GS CleanTech will seek leave to amend this Complaint to allege their true names and capacities when they have been ascertained. GS CleanTech is informed and believes and thereon alleges that each of the fictitiously named Defendants infringe and will continue to infringe the patents-in-suit.

16. Upon information and belief, GEA has installed equipment at Ace Ethanol and/or one or more of Defendant DOES 1-30's facilities and/or rented, leased, supplied, sold or

4

otherwise provided equipment to Ace Ethanol and one or more of Defendant DOES 1-30, wherein the use of such equipment by Ace Ethanol and one or more of such Defendant DOES 1-30 directly infringes one or more claims of the patents-in-suit. By virtue of the actions taken by GEA, GEA has contributorily infringed one or more of the claims of the patents-in-suit and/or actively induced Ace Ethanol and/or one or more of the Defendant DOES 1-30 to infringe one or more of the claims of the patents-in-suit.

17. Upon information and belief, ICM has installed equipment at one or more of Defendant DOES 1-30's facilities and/or rented, leased, supplied, sold or otherwise provided equipment to one or more of Defendants DOES 1-30, wherein the use of such equipment by one or more of such Defendant DOES 1-30 directly infringes one or more claims of the patents-in-suit. By virtue of the actions taken by ICM, ICM has contributorily infringed one or more of the claims of the patents-in-suit and/or actively induced one or more of the Defendant DOES 1-30 to infringe one or more of the claims of the patents-in-suit.

18. Upon information and belief, as the founder, President and CEO of ICM, Vander Griend is in control of ICM and its operations.

19. Upon information and belief, Vander Griend, Ace Ethanol, GEA, and ICM have had specific knowledge of the existence of the '858 patent since the day that it issued on October 13, 2009.

20. Upon information and belief, Vander Griend, Ace Ethanol, GEA, and ICM have had specific knowledge of the existence of the '231 application that issued as the '516 patent since at least about October 2009.

21. Upon information and belief, Vander Griend, Ace Ethanol, GEA, and ICM have had specific knowledge of the existence of the '516 patent since it issued on August 30, 2011.

22. Upon information and belief, Vander Griend, Ace Ethanol, GEA, and ICM have had specific knowledge of the existence of the '136 application that issued as the '517 patent since at least about October 2009.

23. Upon information and belief, Vander Griend, Ace Ethanol, GEA, and ICM have had specific knowledge of the existence of the '517 patent since it issued on August 30, 2011.

24. Upon information and belief, following the issuance of the '858 patent, under the control of Vander Griend and at the direction of Vander Griend, ICM agreed to indemnify its customers for any claims arising out of the infringement of adversely owned patents by such customer of corn oil extraction equipment purchased and used by such customer, wherein such indemnification agreements specifically include ICM's provision of a defense for such customer, at ICM's expense, against claims asserted by GS CleanTech against such customers claiming that the customers have infringed one or more claims of the patents-in-suit.

25. For example, Cardinal Ethanol, LLC is a named defendant in a separate patent infringement lawsuit filed in the United States District Court for the Southern District of Indiana that also involves the '858 patent (GS Cleantech Corp. v. Cardinal Ethanol, LLC, Case No. 1:10-cv-0180-LJM-DML) filed on February 11, 2010 (hereinafter the "Cardinal Ethanol lawsuit"). The Cardinal Ethanol lawsuit is part of the present MDL case.

26. In the Cardinal Ethanol lawsuit, GS CleanTech sued Cardinal alleging that Cardinal has infringed one or more claims of the '858 patent by virtue of its use of the corn oil extraction equipment supplied by ICM to Cardinal. On or about February 16, 2010, five days after the commencement of the Cardinal Ethanol lawsuit, Vander Griend, executed an amendment to an agreement between ICM and Cardinal wherein ICM agreed to indemnify Cardinal for any claims arising out of the infringement of adversely owned patents by Cardinal

of corn oil extraction equipment purchased and used by Cardinal and furthermore wherein ICM specifically agreed to indemnify Cardinal and provide a defense for Cardinal in the Cardinal Ethanol lawsuit.

27. Upon information and belief, the main purpose of the indemnification agreements provided by ICM under the control of and at the direction of Vander Griend, is to overcome the deterrent effect that the patent laws would have on the Defendants.

28. Upon information and belief, by virtue of the actions taken by Vander Griend, who is in control of ICM and its operations, Vander Griend possessed specific intent to encourage ICM's customers to infringe one or more claims of the patents-in-suit and knew or should have known that his actions would induce ICM's customers to infringe one or more claims of the patents-in-suit. By virtue of the actions taken by Vander Griend, who is in control of ICM and its operations, Vander Griend has actively aided and abetted ICM in actively inducing its customers to infringe one or more claims of the patents-in-suit.

29. In a separate lawsuit filed in U.S. District Court, District of Kansas (Civil Action No. 09-cv-01315-WEB-KMH (the "ICM Suit")), ICM filed a second amended complaint ("ICM Complaint") for declaratory judgment of non-infringement and invalidity of the '858 patent and has also alleged unfair competition under Kansas state law against GS CleanTech and GreenShift. A true and correct copy of the ICM Complaint is attached hereto as Exhibit F. However, that Court has no jurisdiction over either GS CleanTech or GreenShift.

30. In a separate lawsuit filed in the U.S. District Court, Southern District of New York, (Civil Action No. 09-cv-7686 (LMM) (the "GEA/Ace Ethanol Suit")), GEA and Ace Ethanol filed a Third Amended Complaint ("GEA Complaint") for declaratory judgment of non-infringement and invalidity and have alleged that they have suffered injuries as a result of

GreenShift's notification of GS CleanTech's then-pending patent applications. A true and correct copy of the GEA Complaint is attached hereto as Exhibit G.

31.     The Court has personal jurisdiction over Defendants because, among other things, they reside in and/or transact business in this District, at least by offering to sell, selling, purchasing, and/or advertising the infringing products and/or placing them into the stream of commerce in such a way as to reach customers in this judicial District, and/or because they have sufficient minimum contacts with this judicial District. New York's long-arm statute, N.Y. CPLR § 302(a), also permits personal jurisdiction over Defendants because the claims arise from their transaction of business within the state or its contracts to supply goods or services in the state.

32.     Venue is proper in this District under 28 U.S.C. §§ 1391(b)-(d) and 1400(b).

## BACKGROUND FACTS

33.     GS CleanTech has invented a novel patented process to extract corn oil from the byproducts created during the manufacture of ethyl alcohol. This process is claimed in GS CleanTech's patents-in-suit.

34.     Recently, significant attention has been given to the production of ethyl alcohol, or "ethanol," for use as an alternative fuel. Ethanol not only burns cleaner than fossil fuels, but also can be produced using grains such as corn, which are abundant and renewable domestic resources.

35.     In the United States, ethanol is typically produced from corn. Corn contains significant amounts of sugar and starch, which are fermented to produce ethanol.

36.     A popular method of producing ethanol is known as "dry milling," whereby the starch in the corn is used to produce ethanol through fermentation. In a typical dry milling

method, the process starts by grinding each kernel of corn into meal, which is then slurried with water into mash. Enzymes are added to the mash to convert the starch to sugar. Yeast is then added in fermentors to convert the sugar to ethanol and carbon dioxide. After fermentation, the mixture is transferred to distillation columns where the ethanol is evaporated and recovered as product, leaving an intermediate product called "whole stillage." The whole stillage contains the corn oil and the parts of each kernel of corn that were not fermented into ethanol.

37. Despite containing valuable corn oil, the whole stillage has traditionally been treated as a byproduct of the dry milling fermentation process and used primarily to supplement animal feed mostly in the form of a product called "dried distillers grains with solubles" ("DDGS").

38. Prior to GS CleanTech's invention, efforts to recover the valuable corn oil from the whole stillage had not been successful in terms of efficiency or economy. A need therefore existed for a more efficient and economical manner of recovering corn oil. GS CleanTech has filled that need with its novel and inventive process.

39. The inventors of the novel process, David Cantrell and David Winsness, completed feasibility testing with an early-stage corn oil extraction prototype in 2004 and demonstrated, for the first time, that efficient extraction of the corn oil trapped in the dry milling byproducts was economically feasible.

40. In August of 2004, the inventors filed the '050 provisional application directed to their novel corn oil extraction methods and systems. The '858, '516, '517, and '484 patents claim priority back to the '050 provisional application.

41. In one embodiment, GS CleanTech's patented method comprises initially processing the whole stillage by mechanically separating (such as by using a centrifugal

9

decanter) the whole stillage into distillers wet grains and thin stillage, and then introducing the thin stillage into an evaporator to form a concentrated byproduct or "syrup." Prior to recombining the now concentrated syrup with the distillers wet grains, the syrup is introduced into a second mechanical separator, such as a second centrifuge, which is different from the centrifuge that mechanically separated the whole stillage into distillers wet grains and thin stillage. This second centrifuge separates corn oil from the syrup thereby allowing for the recovery of usable corn oil. The syrup that exits the centrifuge is then recombined with the distillers wet grain and dried in a dryer to form the DDGS. The corn oil that is extracted from the syrup can be used for various purposes such as feedstock for producing biodiesel.

42. After filing the '050 provisional application in 2004, the inventors of GS CleanTech's novel corn oil extraction method began to engage the ethanol manufacturing industry to explain and market the corn oil extraction method itself and the benefits to be had by ethanol manufacturers if they were to install these systems in their facilities. In fact, in 2005, the inventors invited ethanol manufacturers to a symposium to hear about the advantages of this method and about 30 percent of the industry attended.

43. In the GEA Complaint in the GEA/Ace Ethanol Suit, GEA admits that its customers directly infringe the claims of the patents-in-suit. (Exh. G, ¶ 14) GEA further admits that, at a minimum, it indirectly infringes the patents-in-suit. Id. In fact, GEA seems to boast about this infringement by admitting that, as of the date the original GEA Complaint was filed, it "sold twenty-nine centrifuges designed for corn oil recovery to twenty different ethanol plants across the country" which has resulted in "***over $15 million*** in total sales for GEA." Id. ¶ 37. GEA further seems to boast that it "is negotiating the sale of more than twenty additional machines" at the time of the filing of the original GEA Complaint. Id.

44. GEA asserts that, in 1998, some six years prior to the filing of the '050 provisional application, GEA began to market its centrifuges to the ethanol industry. However, at that time, GEA was not marketing centrifuges for the purpose of extracting corn oil from dry milling byproducts because the corn oil extraction process had not yet been invented. Instead, GEA marketed its centrifuges to be used to mechanically separate the whole stillage into distillers wet grains and thin stillage.

45. Interestingly, by GEA's own admission, and surely not by coincidence, it was not until 2005 - after the inventors of the corn oil extraction technology began marketing these new corn oil extraction methods and systems to the ethanol industry - that GEA started to market its centrifuges to those same ethanol manufacturers for purposes of extracting corn oil by the methods taught in the patents-in-suit.

46. GEA admits that the centrifuges that it has supplied to its customers for purposes of corn oil extraction are designed for that specific purpose. GEA also specifies the process that its customers employ to extract corn oil from the condensed thin stillage (i.e., syrup) using GEA's centrifuges.

47. In the GEA Complaint, Ace Ethanol admits that it is one of GEA's customers, and that since August 2008, it has employed "a [GEA] centrifuge to separate corn oil from condensed thin stillage." (Exh. G, ¶ 5) Ace Ethanol further admits that it directly infringes the claims of the '858 patent. Id., ¶¶ 5, 38.

48. In the ICM Complaint in the ICM Suit, ICM admits that it "designs and builds ethanol production plants for customers and promotes, sells and installs centrifuge equipment to such customers for recovering oil from corn byproducts." (Exh. F, ¶ 9) ICM further admits that it "sell[s] and/or use[s] equipment to practice corn oil recovery methods that are in part the subject of the claims of the '858 Patent." (Id., ¶ 8).

49. The process used by Ace Ethanol and one or more Defendant DOES 1-30, as described by GEA and Ace Ethanol in the GEA/Ace Ethanol First Amended Complaint, and the process used by one or more Defendant DOES 1-30 inclusive, as described by ICM in the ICM Complaint, infringe the claims of GS CleanTech's patent applications as published and as issued in the patents-in-suit.

50. GS CleanTech is entitled to provisional rights under 35 U.S.C. § 154(d) because Ace Ethanol and Defendant DOES 1-30 make, use, offer for sale, or sell in the United States the invention as claimed in the published '859 application; Ace Ethanol and Defendant DOES 1-30 had actual notice of the published '859 application; and the issued claims in the '858 patent are substantially identical to the originally published claims in the '859 application.

51. In the GEA Complaint, GEA and Ace Ethanol admit that they "have separated corn oil through evaporation followed by centrifugation and intend to continue to do so." GEA further admits that it "has previously sold and intends to continue to sell centrifuges to customers like Ace Ethanol that will be used in the corn oil recovery process." (Exh. F, ¶ 14)

## COUNT I
### (Infringement of U.S. Patent No. 7,601,858)

52. GS CleanTech repeats and realleges paragraphs 1-51, above, as though fully set forth herein.

53. Defendants infringe and will continue to infringe one or more of the claims of the '858 patent, by, among other activities, practicing the claimed methods and/or processes, and/or by knowingly and actively inducing others to infringe, and/or by contributing to the infringement of others.

54. Defendants' infringement, contributory infringement and/or inducement to infringe has injured GS CleanTech, and GS CleanTech is entitled to recover damages adequate to compensate it for such infringement.

55. Defendants' infringement, contributory infringement and/or inducement to infringe has been willful, deliberate, and objectively reckless.

56. Defendants' infringing activities have injured and will continue to injure GS CleanTech, unless and until this Court enters an injunction prohibiting further infringement and, specifically, enjoining further manufacture, use, sale, importation, and/or offer for sale of products or practice of any methods and/or processes that come within the scope of the claims of the '858 patent.

## COUNT II
**(Infringement of U.S. Patent No. 8,008,516)**

57. GS CleanTech repeats and realleges paragraphs 1-56, above, as though fully set forth herein.

58. Defendants infringe and will continue to infringe one or more of the claims of the '516 patent, by, among other activities, practicing the claimed methods and/or processes, and/or by knowingly and actively inducing others to infringe, and/or by contributing to the infringement of others.

59. Defendants' infringement, contributory infringement and/or inducement to infringe has injured GS CleanTech, and GS CleanTech is entitled to recover damages adequate to compensate it for such infringement.

60. Defendants' infringement, contributory infringement and/or inducement to infringe has been willful, deliberate, and objectively reckless.

61. Defendants' infringing activities have injured and will continue to injure GS CleanTech, unless and until this Court enters an injunction prohibiting further infringement and, specifically, enjoining further manufacture, use, sale, importation, and/or offer for sale of products or practice of any methods and/or processes that come within the scope of the claims of the '516 patent.

## COUNT III
### (Infringement of U.S. Patent No. 8,008,517)

62. GS CleanTech repeats and realleges paragraphs 1-61, above, as though fully set forth herein.

63. Defendants infringe and will continue to infringe one or more of the claims of the '517 patent, by, among other activities, practicing the claimed methods and/or processes, and/or by knowingly and actively inducing others to infringe, and/or by contributing to the infringement of others.

64. Defendants' infringement, contributory infringement and/or inducement to infringe has injured GS CleanTech, and GS CleanTech is entitled to recover damages adequate to compensate it for such infringement.

65. Defendants' infringement, contributory infringement and/or inducement to infringe has been willful, deliberate, and objectively reckless.

66. Defendants' infringing activities have injured and will continue to injure GS CleanTech, unless and until this Court enters an injunction prohibiting further infringement and, specifically, enjoining further manufacture, use, sale, importation, and/or offer for sale of products or practice of any methods and/or processes that come within the scope of the claims of the '517 patent.

## COUNT IV
### (Infringement of U.S. Patent No. 8,283,484)

67. GS CleanTech repeats and realleges paragraphs 1-66, above, as though fully set forth herein.

68. Defendants infringe and will continue to infringe one or more of the claims of the '484 patent, by, among other activities, practicing the claimed methods and/or processes, and/or by knowingly and actively inducing others to infringe, and/or by contributing to the infringement of others.

69. Defendants' infringement, contributory infringement and/or inducement to infringe has injured GS CleanTech, and GS CleanTech is entitled to recover damages adequate to compensate it for such infringement.

70. Defendants' infringement, contributory infringement and/or inducement to infringe has been willful, deliberate, and objectively reckless.

71. Defendants' infringing activities have injured and will continue to injure GS CleanTech, unless and until this Court enters an injunction prohibiting further infringement and, specifically, enjoining further manufacture, use, sale, importation, and/or offer for sale of products or practice of any methods and/or processes that come within the scope of the claims of the '484 patent.

## COUNT V
### (Infringement of U.S. Patent No. 8,168,037 by ICM)

72. GS CleanTech repeats and realleges paragraphs 1-71, above, as though fully set forth herein.

73. ICM infringes and will continue to infringe one or more of the claims of the '037 patent, by, among other activities, practicing the claimed methods and/or processes, and/or by knowingly and actively inducing others to infringe, and/or by contributing to the infringement of others.

74. ICM's infringement, contributory infringement and/or inducement to infringe has injured GS CleanTech, and GS CleanTech is entitled to recover damages adequate to compensate it for such infringement.

75. ICM's infringement, contributory infringement and/or inducement to infringe has been willful, deliberate, and objectively reckless.

76. ICM's infringing activities have injured and will continue to injure GS CleanTech, unless and until this Court enters an injunction prohibiting further infringement and, specifically, enjoining further manufacture, use, sale, importation, and/or offer for sale of products or practice of any methods and/or processes that come within the scope of the claims of the '037 patent.

## COUNT VI
### (Infringement of U.S. Patent No. 8,168,037 by Vander Griend)

77. GS CleanTech repeats and realleges paragraphs 1-76, above, as though fully set forth herein.

78. Vander Griend infringes and will continue to infringe one or more of the claims of the '037 patent, by, among other activities, practicing the claimed methods and/or processes,

and/or by knowingly and actively inducing others to infringe, and/or by contributing to the infringement of others.

79. Vander Griend' infringement, contributory infringement and/or inducement to infringe has injured GS CleanTech, and GS CleanTech is entitled to recover damages adequate to compensate it for such infringement.

80. Vander Griend' infringement, contributory infringement and/or inducement to infringe has been willful, deliberate, and objectively reckless.

81. Vander Griend' infringing activities have injured and will continue to injure GS CleanTech, unless and until this Court enters an injunction prohibiting further infringement and, specifically, enjoining further manufacture, use, sale, importation, and/or offer for sale of products or practice of any methods and/or processes that come within the scope of the claims of the '037 patent.

## PRAYER FOR RELIEF

WHEREFORE, GS CleanTech respectfully asks this Court to enter judgment against Defendants and against their respective subsidiaries, successors, parents, affiliates, officers, directors, agents, servants and employees, and all persons in active concert or participation with them, granting the following relief:

A. The entry of judgment in favor of GS CleanTech and against Defendants;

B. A preliminary injunction prohibiting further infringement, inducement, and/or contributory infringement of the patents-in-suit;

C. A permanent injunction prohibiting further infringement, inducement, and/or contributory infringement of the patents-in-suit;

D. An award of damages adequate to compensate GS CleanTech for the infringement that has occurred, together with prejudgment interest from the date the infringement began;

E. An award to GS CleanTech of all remedies available under 35 U.S.C. § 284;

F. An award to GS CleanTech of all remedies available under 35 U.S.C. § 285;

G. An award to GS CleanTech of all remedies available under 35 U.S.C. § 154(d); and

H. Such other relief to which GS CleanTech is entitled under law, and any other and further relief that this Court or a jury may deem just and proper.

## JURY DEMAND

GS CleanTech demands a trial by jury on all issues so triable.

Respectfully submitted,

CANTOR COLBURN, LLP

Date: November 9, 2012

/s/ Michael J. Rye_____
Michael J. Rye, Esq.
Charles F. O'Brien, Esq.
Cantor Colburn LLP
20 Church Street, 22nd Floor
Hartford, CT 06103
Tel: 860-286-2929
Fax: 860-286-0115
mrye@cantorcolburn.com
cobrien@cantorcolburn.com

James P. Strenski
Kelly R. Eskew
CANTRELL STRENSKI & MEHRINGER, LLP
Email: jstrenski@csmlawfirm.com
ATTORNEYS FOR THE PLAINTIFF

## CERTIFICATE OF SERVICE

      I hereby certify that on November 9, 2012, a copy of the foregoing **FOURTH AMENDED COMPLAINT FOR PATENT INFRINGEMENT** was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

      /s/ Michael J. Rye\_\_\_\_\_
      Michael J. Rye